AccuWeb, Inc.,
Plaintiff-Appellant-Petitioner,

Raymond Buisker,
Plaintiff,

v.

Foley & Lardner, Harry C. Engstrom,
Quarles & Brady LLP and Nicholas Seay,
Defendants-Respondents.

Supreme Court

*No. 2005AP3190. Oral argument December 12, 2007.
—Decided March 28, 2008.*

2008 WI 24

(Also reported in 746 N.W.2d 447.)

For the plaintiff-appellant-petitioner there were briefs by *Daniel W. Hildebrand, Jon P. Axelrod, Joseph R. Ranney, Dawn E. Hildebrand,* and *DeWitt Ross & Stevens S.C.,* Madison, and oral argument by *Jon P. Axelrod.*

For the defendants-respondents, Foley & Lardner and Harry C. Engstrom, there was a brief by *Claude J.*

*Covelli* and *Boardman Suhr Curry & Field LLP,* and oral argument by *Claude J. Covelli.*

For the defendants-respondents, Quarles & Brady LLP and Nicholas Seay, there was a brief by *William F. Bauer, Elizabeth M. Johnson,* and *Coyne, Schultz, Becker & Bauer SC,* Madison, and *Michael A. Pope, Matthew E. Leno,* and *McDermott Will & Emery LLP,* Chicago, Ill., and oral argument by *William F. Bauer.*

¶ 1. N. PATRICK CROOKS, J. This is a review of an unpublished decision of the court of appeals,[1] affirming a summary judgment order of the Circuit Court for Dane County, Judge John C. Albert.

¶ 2. Petitioner, AccuWeb, Inc. (AccuWeb), seeks review of a decision of the court of appeals that affirmed the summary judgment order entered against it in this negligence and legal malpractice action. Respondents are Foley & Lardner (Foley), Harry C. Engstrom (Engstrom), Quarles & Brady LLP (Quarles), and Nicholas Seay (Seay). This case centers on whether AccuWeb, at the summary judgment stage, put forth sufficient evidence to raise a genuine issue of material fact on the question of whether the alleged failure of the Respondents to prevent the premature expiration of AccuWeb's 5,072,414 patent (the 414 patent) was a substantial factor in causing AccuWeb actionable damages, thus preventing summary judgment. The second issue is whether AccuWeb presented sufficient evidence to allow a fair and reasonable estimate of the amount of such damages, so that there was a genuine issue of material fact, thus preventing summary judgment as to the amount of those damages. We address the second issue because it was addressed by the circuit court. This case

---

[1] *AccuWeb, Inc. v. Foley & Lardner,* No. 2005AP3190, unpublished slip op. (Wis. Ct. App. Jan. 31, 2007).

involves the interpretation and application of Wis. Stat. § 802.08 (2003–04),[2] the Wisconsin summary judgment statute.

¶ 3.   Given the standard of review on summary judgment motions, we hold that AccuWeb demonstrated that there were genuine issues of material fact that were sufficient to preclude the granting of a motion for summary judgment against it on the issues of whether there was evidence of damages resulting from the loss of its 414 patent, and on the amount of those damages. Based on the record before us, we are satisfied that AccuWeb could present evidence sufficient to enable a reasonable jury to award damages to the company in an amount that is supported by the evidence. We, therefore, reverse the decision of the court of appeals, because we hold that there were genuine issues of material fact that precluded summary judgment against AccuWeb.

I

¶ 4.   AccuWeb, a manufacturer of web guide control systems, sued the Respondents alleging that they were negligent and had committed malpractice for permitting the 414 patent to lapse. The 414 patent covered a technique, called a "compensated detection system" or "Ultrasonic Web Edge Detection Method and Apparatus," that helps to maintain web guide points. It does so by detecting and eliminating the vulnerability of sensors to errors caused by environmental variables, such as humidity and ambient temperature, by automatically compensating for the changes caused by such variables.

¶ 5.   Through its president, Raymond Buisker (Buisker), AccuWeb retained Engstrom as its patent attorney in 1989. Shortly thereafter, Engstrom notified

---

[2] All further references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

AccuWeb that he had a conflict of interest on the 414 patent. As a result, AccuWeb retained Seay, a Quarles attorney, to complete the work on the 414 patent's application. However, Engstrom continued to be AccuWeb's patent attorney on other matters.

¶ 6.  In 1991, the 414 patent was issued. AccuWeb had to pay a maintenance fee to prevent the patent from expiring. The fee was due by June 10, 1995 (a grace period extended this date until December 10, 1995). Along with another patent not in issue here (the 573 patent), the 414 patent expired when the maintenance fee was not paid on time.[3] If the 414 patent had not lapsed, it would have expired naturally in 2009.[4]

¶ 7.  In June 1999, when the next maintenance fee would have been due on the 414 patent had the patent not prematurely lapsed in 1995, AccuWeb received a letter from a Quarles paralegal notifying Buisker of the maintenance fee deadline. This letter caused AccuWeb to inquire whether the 1995 maintenance fee had been paid or if the patent had, instead, expired. After Engstrom confirmed that the fee had not been paid and that the patent had expired, AccuWeb and Buisker sued the Respondents for legal malpractice and breach of contract. They claimed that the patent lapsed prematurely because the Respondents failed to remind AccuWeb of its responsibility to remit the required patent maintenance fees in a timely manner. AccuWeb claimed that the Respondents were negligent, thus causing the 414 patent to lapse.

---

[3] AccuWeb hired other attorneys to pursue the reinstatement of both patents, but only the 573 patent was reinstated. The 573 patent supplemented the 414 patent.

[4] None of the parties dispute that the patent would have naturally expired 20 years after its application filing date of July 31, 1989, on July 31, 2009.

¶ 8.   AccuWeb claimed that such negligence caused the company damages in many ways. First, AccuWeb contends that the patent's lapse was a major reason that the prospective sale of the company to FiTech fell through at the price originally offered. On July 30, 1998, FiTech submitted a letter of intent to buy AccuWeb for $9 million in addition to the assumption of AccuWeb's accounts payable. However, as part of FiTech's offer, FiTech allowed AccuWeb to retain its cash and its accounts receivable. As a result, the proposed sale would have provided AccuWeb with a net benefit of approximately $12.2 million. However, after the due diligence period expired, FiTech withdrew its initial offer. The only reason that FiTech gave to AccuWeb for withdrawing its initial offer was that it was due to "economic" conditions, even though AccuWeb allegedly was having a record year. FiTech then discussed an offer to purchase AccuWeb for $5.5 million, which AccuWeb rejected. AccuWeb received only the $85,000 of FiTech's deposit that it forfeited when the deal collapsed. AccuWeb conceded that no one from FiTech mentioned the lapse of the relevant patent when FiTech withdrew its original offer.

¶ 9.   During this litigation, Buisker testified he did not believe that the offered reason was the true reason that FiTech lowered its offer, and he stated that he now believes that the true reason was that FiTech discovered the lapsed patent. AccuWeb's executives, Buisker and his son, Brian, stated that FiTech had access to public records during the due diligence process that showed that the 414 patent had expired. These AccuWeb executives also stated that FiTech discussed AccuWeb's patents during negotiations. While admitting that AccuWeb had not responded to the many letters it had received from parties interested in buying the company, in his deposition, Buisker also testified that AccuWeb had

decided not to pursue additional potential sales opportunities partially because it did not wish to disclose that the 414 patent was no longer protected.

¶ 10. AccuWeb also asserted that it lost a valuable right in regard to the fair market value of the patent itself. Furthermore, AccuWeb claimed that its future resale value has been diminished. AccuWeb did not, however, make a specific claim for lost profits.

¶ 11. Foley and Engstrom denied having any obligation at all to send AccuWeb a notice in regard to the deadline for the payment of the maintenance fee. Quarles and Seay denied having a duty to send such a notice because they claimed that AccuWeb terminated their attorney-client relationship before the fee was due.[5] All of the Respondents denied liability and also denied that AccuWeb had suffered any damages as a result of the Respondents' alleged negligence.

¶ 12. All of the Respondents moved for partial summary judgment, both on Buisker's personal claim and on AccuWeb's diminished business valuation claim. Foley further moved to dismiss AccuWeb's economic loss claim.

¶ 13. Finding that Buisker lacked standing to sue because he had assigned both patents to AccuWeb, the circuit court dismissed his personal claims. The circuit court also dismissed AccuWeb's claim of diminished business valuation on the rationale that AccuWeb did not provide sufficient evidence to show genuine issues of material fact that the alleged negligence caused Accu-Web damages, and because the company failed to show that it could establish its alleged damages to a reasonable

---

[5] However, according to AccuWeb, Seay was the attorney of record with the patent office through 1999 which would have been four years after the fee was due.

degree of certainty. Specifically, the circuit court held that AccuWeb had not sufficiently established that the patent's lapse was a substantial factor in its inability to sell the company to FiTech. The circuit court deemed AccuWeb's assertions on FiTech's motive for withdrawing from the purchase of AccuWeb as being "speculative" and "simply insufficient" to prove that the negligence alleged had been a substantial factor in the purchase falling through. The circuit court also held that Buisker's beliefs on FiTech's motive for withdrawing its first offer were not sufficient evidence to create genuine issues of material fact on AccuWeb's damages claims. The circuit court concluded that AccuWeb was "unable to present evidence of diminished business valuation damages to a 'reasonable certainty' or evidence sufficient to enable a jury to make a fair and reasonable estimate of such damages."

¶ 14.   AccuWeb filed a motion for reconsideration, which the circuit court denied. The circuit court did so because no one was attempting to use the expired patent and, as a result, there was no economic loss and no loss in business valuation. The parties then signed a stipulation and release agreement wherein AccuWeb released all claims against the Respondents, except for the diminution in business valuation claim. On November 23, 2005, the circuit court entered a final judgment that dismissed the case.

¶ 15.   AccuWeb appealed the circuit court's decision. A divided court of appeals affirmed the circuit court.[6] AccuWeb filed a petition for review of the court of appeals' decision, which we granted.

---

[6] Judges Paul B. Higginbotham and David G. Deininger were in the majority, and Judge Charles P. Dykman dissented.

## II

¶ 16. We review a circuit court's grant or denial of summary judgment de novo and independently of either the circuit court or the court of appeals; however, we apply the same methodology and benefit from their analyses. *AKG Real Estate, LLC v. Kosterman,* 2006 WI 106, ¶ 14, 296 Wis. 2d 1, 717 N.W.2d 835. We must determine whether the complaint states an actionable claim. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is only appropriate if there are no genuine issues of material fact, and the moving party, having established a prima facie case, is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). Summary judgment materials, including pleadings, depositions, answers to interrogatories, and admissions on file are viewed in the light most favorable to the nonmoving party. *Rainbow Country Rentals v. Ameritech Publ'g,* 2005 WI 153, ¶ 13, 286 Wis. 2d 170, 706 N.W.2d 95.

## III

¶ 17. The first issue on review is whether there was sufficient evidence of actionable damages, caused by the alleged failure of the Respondents to prevent the company's premature loss of its 414 patent, to raise a genuine issue of material fact and, thus, to prevent summary judgment. The second issue is whether Accu-Web presented sufficient evidence to allow a fair and reasonable estimate of the amount of such damages, so that there was a genuine issue of material fact, thus preventing summary judgment as to the amount of those damages. We address the second issue because it was addressed by the circuit court.

267

¶ 18.   On review, AccuWeb claims that there are genuine issues of material fact on damages that preclude summary judgment. AccuWeb argues that there was sufficient evidence in the record upon which a jury could have concluded that its exclusivity and competitive advantage in the web guide industry, which was conferred by the 414 patent, was a valuable right to the company and also a source of its success. AccuWeb further argues that the jury was entitled to make a decision on whether the patent made AccuWeb a more valuable company to prospective purchasers. AccuWeb also claims that it showed that it could establish damages to a reasonable degree of certainty through the Mesirow Report,[7] which concerned the diminution in value that AccuWeb alleges resulted from the loss of its 414 patent. AccuWeb argues that, even though criticism of the Mesirow Report may be appropriate for cross-examination and for argument to a jury, such criticisms go only to the weight of the evidence presented, and do not justify summary judgment. AccuWeb asks this court to reverse the court of appeals' decision and to remand the case to the circuit court for a jury trial on the issues of liability and damages.

¶ 19.   The Respondents argue that, because AccuWeb admitted it had no evidence that it had experienced, or likely would experience, any loss of sales, revenues, or profits because of the 414 patent's expiration, AccuWeb could not prove damages to a reasonable degree of

---

[7] The Mesirow Report was a valuation appraisal of AccuWeb as of November 15, 2002, that AccuWeb paid Mesirow Financial, through its employee, Jay Goldfarb, to prepare. The report was intended to quantify the amount of damage that AccuWeb had incurred as a result of prematurely losing the 414 patent. The report was 26 pages long. In addition, it included an appendix with six schedules to support its conclusions.

certainty.[8] They claim that the Mesirow Report's damage calculations were based on assumptions, not opinions, and also claim that even the report's author, Jay Goldfarb (Goldfarb), admitted at his deposition that the damage case assumptions in the report were not completely accurate. As a result, they argue that the report is fatally flawed because it identified a hypothetical loss that was never realized by AccuWeb. Accordingly, if the report was used as a basis for calculating damages, it would result in AccuWeb receiving the same recovery more than once. Consequently, they argue that the circuit court and the court of appeals did not err in rejecting the conclusions in the Mesirow Report because, under Wisconsin law, the potential for an injury is not sufficient to support a claim by a plaintiff for damages. Furthermore, because AccuWeb did not present sufficient evidence of the fact and extent of the

---

[8] The phrase "reasonable certainty" refers to a component of the ordinary burden of proof that a plaintiff must carry at trial when proving facts to the jury. As Wis JI—Civil 1700 states:

> In considering the amount to be inserted by you in answer to each damage question, the burden of proof rests upon each [party] claiming damages to satisfy you by the greater weight of the credible evidence, to a reasonable certainty, that the [party] sustained damages with respect to the element or elements mentioned in the question and the amount of the damages. ... "Reasonable certainty" means that you are persuaded based upon a rational consideration of the evidence. Absolute certainty is not required, but a guess is not enough to meet the burden of proof.

To establish the amount of those damages with enough certainty to present a genuine issue of material fact to prevent summary judgment, AccuWeb need only show that a reasonable jury could award the company damages in an amount that is supported by the evidence. *See Schmidt v. N. States Power Co.*, 2007 WI 136, ¶ 24, 305 Wis. 2d 538, 742 N.W.2d 294 (citation omitted) ("A factual issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.")

injury it alleged, the Respondents argue that summary judgment was appropriate on AccuWeb's legal malpractice claim. *See Lewandowski v. Cont'l Cas. Co.*, 88 Wis. 2d 271, 277, 276 N.W.2d 284 (1979) (holding that, in an attorney malpractice case, the client, here AccuWeb, has the burden of proving both the fact and the extent of the alleged injury). They also argue that a patent has no "inherent value" that would entitle the holder of the patent to recover monetary damages, and that injury to one's legal rights is not necessarily tantamount to an actual monetary injury. Furthermore, the Respondents assert that AccuWeb's loss of business value upon sale argument ignores the undisputed fact that AccuWeb is not for sale, rendering this theory of damages untenable as a matter of law. The Respondents argue that the dismissal of AccuWeb's claims was proper and that the court of appeals' decision should be affirmed because AccuWeb failed to prove that the 414 patent's loss caused any monetary loss in the value of its business.

¶ 20.   For the reasons discussed in detail below, we are satisfied that there were genuine issues of material fact that precluded the granting of the summary judgment motion against AccuWeb. Our holding focuses on three main areas where AccuWeb presented sufficient evidence on damages to avoid the granting of summary judgment against it. First, AccuWeb showed diminution of business valuation problems upon any attempt to sell its business. Second, AccuWeb clearly demonstrated a loss of its ability to license or assign the rights to use the invention formerly protected by the 414 patent. Third, AccuWeb presented enough information to establish reasonable competing inferences on the reason for FiTech's substantial reduction in the amount of its offer to purchase AccuWeb, which was a reduction from approximately $12.2 million to $5.5 million.

¶ 21.   As we noted previously, summary judgment is appropriate only if there are no genuine issues of material fact, and the moving party, having established a prima facie case, is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). Furthermore, summary judgment materials, including pleadings, depositions, answers to interrogatories, and admissions on file are viewed in the light most favorable to the nonmoving party. *Rainbow Country Rentals,* 286 Wis. 2d 170, ¶ 13. Also, the "burden is on the moving party to prove that there are no genuine issues of material fact." *Central Corp. v. Research Prods. Corp.,* 2004 WI 76, ¶ 19, 272 Wis. 2d 561, 681 N.W.2d 178. We are convinced that the Respondents did not establish that there were no genuine issues of material fact when AccuWeb's submissions are viewed in the light most favorable to AccuWeb. Given the facts of this case, we are convinced that AccuWeb showed sufficient evidence of actionable damages to avoid summary judgment. From the record presented, we are satisfied that AccuWeb could present sufficient evidence to enable a reasonable jury to award damages to the company in an amount that is supported by the evidence. We explain our rationale in further detail in the following paragraphs.

¶ 22.   One reason for our holding is that the loss of the 414 patent created a risk to AccuWeb's business, one that allegedly resulted in a diminution in the value of AccuWeb's business. The Mesirow Report detailed the connection between the loss of the 414 patent, the risk that competitors would learn of its expiration and, thus, be able to use the technology previously protected by the patent, and the lowering of the value of AccuWeb.[9] This

[9] The Mesirow Report stated that, if the 414 patent had not lapsed, AccuWeb's value on November 15, 2002, would have been

court has recognized such diminution in a business' value as being credible evidence that could support a jury's damage verdict. *See Jolin v. Oster,* 55 Wis. 2d 199, 220–21, 198 N.W.2d 639 (1972) (holding that a jury was entitled to believe a party's testimony about the decline in the value of the party's business). Furthermore, we have stated that attacks on such valuation calculations were "a question for the jury." *Id.* at 221. Summary judgment against AccuWeb should not have been granted given the content of the Mesirow Report.

¶ 23. AccuWeb claims that the 414 patent enabled it to substantially increase the company's sales in the years following its invention. AccuWeb also asserts that it placed a premium price on its products that utilized the technology covered by the 414 patent. AccuWeb further claims that it earned a large share of its profits from the products that incorporated the technology of the 414 patent. Finally, AccuWeb asserts that its products incorporating the 414 patent's technology played a significant role in producing sales of other AccuWeb products.

¶ 24. Given the 414 patent's alleged profit-potential, it was a serious risk to AccuWeb that the 414 patent could have been used by a competitor. Such use, which was a possibility after the loss of the 414 patent, would almost certainly decrease AccuWeb's value upon any potential sale of the company. It would make the company less attractive to potential purchasers. Furthermore, AccuWeb's executives, Buisker and his son,

---

between $6.4 and $10.3 million. The Mesirow Report further stated that AccuWeb's value on that same day, given the 414 patent's lapse, was between $1.7 and $3.0 million. If a jury found the Mesirow Report to be credible, the jury could use such figures to estimate, to a reasonable degree of certainty, the amount that AccuWeb's value diminished as a result of losing the 414 patent.

Brian, testified that, after they discovered the lapse of the patent, they decided not to pursue selling the company to outside purchasers because they did not want to disclose the patent's expiration to potential purchasers.[10]

¶ 25.    Both Buisker and his son, Brian, asserted that the exclusive right to use the 414 patent's technology had made AccuWeb a valuable company to prospective purchasers. The risk factor discussed herein clearly had the potential of lowering the value of AccuWeb in any sale situation, as was demonstrated by the Mesirow Report. Given the details of the Mesirow Report, we are satisfied that AccuWeb need not have shown actual infringement of the technology covered by the patent to survive summary judgment. While this area of law is not replete with published case law, an unpublished federal court case held that a plaintiff was not required to plead in a complaint specific acts of infringement to survive a motion to dismiss. *Beasley v. Avery Dennison Corp.*, No. SA04CA886FB, 2006 WL 925069, at *4 (W.D. Tex. Apr. 3, 2006).

¶ 26.    Notwithstanding the claimed defects and shortcomings of both the Mesirow Report and Goldfarb's expert testimony,[11] we are satisfied that the

---

[10] We note, however, that AccuWeb's attorneys mentioned in their brief that, "[a]fter the FiTech matter, AccuWeb entered into discussions with BST." It is not clear from the record whether BST or AccuWeb initiated such purchase discussions.

[11] The criticisms of the Mesirow Report and of AccuWeb's expert witness, Goldfarb, are summarized in the sentences that follow. First, the Mesirow Report's author made no independent attempt to verify the data upon which the report was based. The Mesirow Report's author stated, "In arriving at the opinions and conclusions presented in this report, we have relied on the accuracy and completeness of information provided to us by

Mesirow Report developed genuine issues of material fact sufficient for AccuWeb to survive summary judgment. This is especially true because summary judgment materials must be viewed in the light most favorable to the nonmoving party, here AccuWeb, *Rainbow Country Rentals,* 286 Wis. 2d 170, ¶ 13, and the proponents, here the Respondents, bear the burden of proving "that there are no genuine issues of material fact." *Central Corp.,* 272 Wis. 2d 561, ¶ 19. The claimed defects and shortcomings of the Mesirow Report and of its author should have been weighed by a jury and not determined on summary judgment. The Respondents' evidence that AccuWeb continued to charge premium prices for its products that incorporated the 414 patent's technology after the patent lapsed, that AccuWeb was profitable after the loss of the 414 patent, and that AccuWeb allegedly did not actively pursue any further sales of its business, might be helpful to a jury in determining the weight to be given to the Mesirow Report. However, such facts do not mean that AccuWeb's damages claim must fail as a matter of law.

---

[AccuWeb] and its counsel. We have accepted this information without further verification." Second, the Mesirow Report's author admitted that he was "not engaged to review or examine [AccuWeb's] financial statements in accordance with the standards established by the American Institute of Certified Public Accountants." Third, Goldfarb's opinions about AccuWeb's future fair market value were based on a number of assumptions. Goldfarb's first assumption was that the date on which AccuWeb suffered its actual damages was November 15, 2002, instead of the date of the patent's expiration, which was December 10, 1995. Goldfarb's second assumption was that one or more competitors would obtain the 414 patent's technology and would introduce products that contained the technology into the marketplace, which Goldfarb was forced to admit at his deposition had not yet occurred.

¶ 27.　It must be noted that, without a valid patent, AccuWeb could not license or assign the invention protected by the 414 patent. Federal statutes give patents "the attributes of personal property." 35 U.S.C. § 261 (2000). Under federal statutes, "patents, or any interest therein," are "assignable in law." *Id.* As a result, the "patentee, or his assigns or legal representatives" may "grant and convey an exclusive right under his . . . patents," to another of "the whole or any specified part" of a patent. *Id.* Furthermore, a patent holder may grant licenses to others to use the invention in return for royalty payments. *Carbice Corp. v. Am. Patents Dev. Corp.*, 283 U.S. 27, 30–31 (1931). Wisconsin case law is in accord, and this court has held that "[t]he right to exclude others is a valuable right and the loss of it would be an injury . . . ." *Boehm v. Wheeler,* 65 Wis. 2d 668, 678, 223 N.W.2d 536 (1974), overruled on other grounds by *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983).

¶ 28.　As a result of AccuWeb's inability to license or assign the invention protected by the 414 patent after that patent lapsed, we are satisfied that the patent's lapse is a loss to AccuWeb, one that a jury could reasonably determine constituted sufficient evidence of damages.

¶ 29.　Reasonable competing inferences could be drawn from the substantial reduction in the amount of FiTech's offer to purchase AccuWeb after FiTech completed its due diligence process. It is reasonable to draw the inference that FiTech learned of the lapse of the 414 patent through the due diligence investigation. As we have previously discussed, summary judgment materials must be viewed in the light most favorable to the nonmoving party, here AccuWeb. *Rainbow Country Rentals,* 286 Wis. 2d 170, ¶ 13.

¶ 30.   FiTech had access to public records during its due diligence process that would have shown that the 414 patent had expired. A jury certainly could consider whether a reasonable inference could be drawn from AccuWeb's evidence that FiTech reduced its offer to purchase AccuWeb because FiTech found out about the 414 patent's expiration. While the Respondents may make an argument to the jury at trial about the potential shortcomings in AccuWeb's arguments on this issue,[12] when viewed in the light most favorable to AccuWeb, enough evidence existed to support reasonable inferences sufficient to defeat a motion for summary judgment. The reasonable competing inferences presented on the summary judgment motion here favor the non-moving party, AccuWeb. We are satisfied that the reasonable competing inferences that could be drawn from FiTech's substantial reduction in its offer, from approximately $12.2 million to $5.5 million, presented a genuine issue of material fact on diminished business valuation damages.

¶ 31.   AccuWeb presented the testimony of Buisker and his son, Brian, both on the 414 patent's value and on the reasons they believed that the sale of AccuWeb to FiTech fell through, causing them monetary damage.

---

[12] Even though there is nothing in the record to prove or disprove their speculation, the Respondents speculate that FiTech likely did not pull out of the transaction because it discovered that the 414 patent had lapsed because, if FiTech had withdrawn its offer "as a result of any matter arising from FiTech's due diligence investigation . . ." of AccuWeb, FiTech would have been entitled to recover its $85,000 deposit. There is no evidence in the record that FiTech attempted to recover its deposit. The Respondents also speculate that the patent must not have had value because there is no evidence in the record that any other companies ever used the technology formerly protected by the 414 patent.

This testimony should not have been rejected in ruling on the summary judgment motion against AccuWeb. This court has stated, "Wisconsin case law is clear that an owner of property may testify as to its value and that such testimony may properly support a jury verdict for damages, even though the opinion is not corroborated or based on independent factual data." *Mayberry v. Volkswagen of Am., Inc.*, 2005 WI 13, ¶ 42, 278 Wis. 2d 39, 692 N.W.2d 226. We held in *Mayberry* that such testimony was "sufficient to survive summary judgment." *Id.* (footnote omitted). However, as in *Mayberry*, the Respondents may challenge the weight and credibility of such opinion testimony at trial. *Id.*

¶ 32. Respondents cite our *Tietsworth* decision in support of their position. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, 270 Wis. 2d 146, 677 N.W.2d 233. *Tietsworth* was "a class action lawsuit on behalf of certain Harley-Davidson motorcycle owners seeking compensatory and punitive damages and injunctive relief . . . for an alleged defect in the motorcycles' engines." *Id.*, ¶ 1. The plaintiffs did not allege "any personal injury or property damage caused by the defective engines," nor did they allege "that their motorcycle engines have actually failed or malfunctioned in any way." *Id.* Rather, they alleged their motorcycles were diminished in value because the defect created a " 'propensity' " for premature engine failure. *Id.* This court held that an allegation that a product had diminished in value, because the product had "demonstrated a propensity for premature failure such that the product might or will at some point in the future fail prematurely [was] too uncertain and speculative to constitute a legally cognizable tort injury and [was] therefore insufficient to state damages in a tort claim for fraud." *Id.*, ¶ 3. We stated, "Actual damage is harm that has already occurred or is 'reasonably

certain' to occur in the future. . . . Actual damage is not the mere possibility of future harm." *Id.*, ¶ 17 (citations omitted).

¶ 33. The reliance by the Respondents on *Tietsworth* is misplaced. In *Tietsworth,* the alleged defect's potential for future damage was uncertain and speculative. *Id.* In contrast, in the present case, Accu-Web has established that the 414 patent lapsed, which is the "defect" that AccuWeb claims resulted in damages. That actual lapse is very different than a claim that an engine may fail in the future, especially when viewed in conjunction with the reduction in the FiTech offer from approximately $12.2 million to $5.5 million.

¶ 34. Given the standard of review on summary judgment motions, we hold that AccuWeb demonstrated that there were genuine issues of material fact that were sufficient to preclude the granting of a motion for summary judgment against it on the issues of whether there was evidence of damages resulting from the loss of its 414 patent, and the amount of those damages. Based on the record before us, we are satisfied that AccuWeb could present evidence sufficient to enable a reasonable jury to award damages to the company in an amount that is supported by the evidence. We, therefore, reverse the decision of the court of appeals because we hold that there were genuine issues of material fact that precluded summary judgment against AccuWeb.

*By the Court.*—Reversed and remanded.

¶ 35. ANNETTE KINGSLAND ZIEGLER, J., did not participate.