COURT OF APPEALS
DECISION
DATED AND FILED

March 15, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP2070**

Cir. Ct. No. **2018CV992**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

MICHAEL A. SCHNAUBELT AND RENAE L. SCHNAUBELT,

    PLAINTIFFS-APPELLANTS,

  V.

UECKER DEVELOPMENT LLC, RUCON CONSTRUCTION MANAGEMENT, INC. AND ANDREW R. UECKER,

    DEFENDANTS-RESPONDENTS.

---

APPEAL from a judgment of the circuit court for Outagamie County: CARRIE A. SCHNEIDER, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings.*

Before Stark, P.J., Hruz and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Michael and Renae Schnaubelt ("the Schnaubelts") appeal a grant of summary judgment dismissing their claims against Andrew Uecker ("Uecker"), Uecker Development, LLC ("the Development Company"), and Rucon Construction Management ("Rucon").[1]  The Schnaubelts' claims arose out of their offer to purchase a newly built home ("the Agreement").   The Schnaubelts contend that they properly pled a breach of contract claim against Rucon, the construction company that built the home.  They also argue that there were genuine issues of material fact regarding whether the real estate broker who drafted and negotiated the Agreement, Uecker, violated his statutory duties as a real estate broker, and whether the seller of the home, the Development Company, violated its implied duty of good faith and was unjustly enriched.   In the alternative, the Schnaubelts argue that the circuit court erroneously exercised its discretion by denying them leave to amend their complaint.

¶2      We agree that, on this record, the circuit court erroneously exercised its discretion by denying the Schnaubelts' request to amend their complaint, but we reject the Schnaubelts' other arguments.   Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶3      In October 2017, the Schnaubelts began having discussions with Uecker regarding purchasing a residential home from the Development Company that was in the process of being built by Rucon.  Uecker was a licensed real estate broker and had a financial and ownership interest in both the Development

---

[1]  When necessary, we refer to the Schnaubelts individually by their first names.

Company and Rucon. Uecker asked Renae whether the Schnaubelts had an agency agreement with another real estate broker, and he suggested that Renae check with the Schnaubelts' previous real estate broker, Lindsey Walters. Uecker also suggested, however, that he draft the Agreement "because of all of the [specifications], construction contract[,] and other related documents related to constructing a new home."

¶4 On Friday, October 20, 2017, Renae contacted Walters about her discussions with Uecker. After speaking to Renae, Walters called Uecker, and Uecker told her that he would have to call her back on Monday, October 23. Before that phone call could take place, however, the Schnaubelts met with Uecker on Sunday, October 22, to "discuss the project."

¶5 At that meeting, Uecker presented the Agreement that he had drafted and told the Schnaubelts that "we need to keep things moving" and that if they "wanted to make changes" to the construction plans, the Schnaubelts needed to sign the Agreement. Uecker further stated that the Schnaubelts could not make changes to the construction plans without signing the Agreement and that they needed to decide right away to avoid project delays. At that time, the foundation for the home had been poured, the framing was nearly complete if not complete, and "the electrical and utilities were being roughed in."

¶6 The Schnaubelts ultimately signed the Agreement that day, agreeing to provide $50,000 in earnest money and to purchase the home for $900,000. The Agreement did not contain either an inspection or financing contingency, but an addendum did include an appraisal contingency. The Agreement also incorporated specifications, designs and drawings for the home that had been previously prepared by Rucon. Consistent with their discussions with Uecker, the

Schnaubelts were able to make changes to the fixtures and the design of the home. They hired, at their own expense, a third-party interior designer who provided design services during the remainder of the construction process.

¶7      During the course of construction, the parties amended the Agreement four times. The first amendment occurred in November 2017, and the parties agreed, among other things, that: (1) the Schnaubelts would be responsible for covering any difference between the appraised value and the final purchase price; (2) the Schnaubelts would deposit $75,000 into an escrow account "for the build of the home upon a completed amendment or change order signed by the [parties]"; (3) funds dispersed from the escrow account would be nonrefundable; and (4) the closing date would be February 23, 2018. The second, third and fourth amendments all adjusted the purchase price, which eventually came to $1,035,417.64. There is no evidence that Walters was ever involved in drafting, reviewing or executing any of the amendments.

¶8      Sometime around when the last amendment was executed in late January 2018, the Schnaubelts started expressing their displeasure regarding the lack of detail supporting the changes to the purchase price. Around that same time, they also began voicing concerns over what they perceived to be defects in the home's construction. In particular, the Schnaubelts identified issues with the home's siding, windows and flashing. Although the Agreement did not contain an inspection contingency, the parties verbally agreed to have an inspection performed on February 13, 2018, ten days before the closing date.

¶9      Prior to the scheduled inspection, Uecker sent the Schnaubelts a proposed fifth amendment to the Agreement, which would have changed the final purchase price again, provided a right to inspect the property, and moved the

closing date to March 2, 2018. On February 12, Renae informed Uecker by email that the Schnaubelts would not be "comfortable signing anything further until we discuss the final numbers at your office." The next day, after the Schnaubelts did not sign the proposed amendment, Uecker cancelled the scheduled inspection and informed the Schnaubelts that "[w]e're unable to accommodate your request for a home inspection until the amendment is signed."

¶10 On February 20, 2018, the Development Company's counsel notified the Schnaubelts that the fifth amendment to the Agreement needed to be signed by the following day, otherwise closing would proceed as scheduled on February 23. The Development Company's counsel also demanded that the Schnaubelts be present for a walkthrough of the home on February 22, and that only the Schnaubelts and their inspector would be allowed on the property at that time. The Schnaubelts did not attend the scheduled closing on February 23.

¶11 Uecker subsequently sent the Schnaubelts a "Cancellation Agreement & Mutual Release" that included provisions cancelling the Agreement and allowing the Development Company to retain the earnest and escrow money. The Schnaubelts did not sign that agreement but, in turn, demanded that the Development Company immediately refund their earnest money, return "the advanced funds used for upgrades," and reimburse their out-of-pocket expenses. In May 2018, the Development Company sold the home to a third-party buyer for $1,025,000.

¶12 After the parties failed to agree on the terms of cancelling the Agreement, the Schnaubelts filed this lawsuit. The Schnaubelts alleged that Rucon breached the Agreement by failing to complete construction in a timely and proficient manner. They also alleged that Uecker breached his statutory duties as

a real estate broker by "pressuring [them] into signing one-sided provisions" and by advancing his own interests over their interests. Finally, the Schnaubelts alleged that the Development Company was unjustly enriched by their fixtures and design work, and that it breached the Agreement—specifically, its implied duty of good faith and fair dealing—by cancelling the inspection.[2] Rucon, Uecker, and the Development Company all moved for summary judgment on the Schnaubelts' claims.

¶13    In a written decision, the circuit court granted summary judgment and dismissed all of the Schnaubelts' claims, except for their unjust enrichment claim against the Development Company. As for the unjust enrichment claim, the court granted the Schnaubelts partial summary judgment on that claim and ordered that they "provide proof of their actual costs for the installed fixtures …." The court noted, however, that the Development Company did not use the Schnaubelts' landscaping plan and that a portion of their design work was subsequently changed to accommodate the third-party buyer. It therefore concluded that no genuine issues of material fact existed on those claims of unjust enrichment. The court also denied the Schnaubelts' request for leave to amend their complaint as an alternative to the court granting summary judgment.

¶14    The Schnaubelts later filed a motion for reconsideration of the circuit court's summary judgment decision, which the court denied. After the Schnaubelts submitted documentation regarding their unjust enrichment claim, the

---

[2] The Schnaubelts also alleged a conversion claim against the Development Company. The circuit court granted summary judgment on that claim, and the Schnaubelts do not make any arguments on appeal regarding that decision. We therefore do not address the conversion claim further.

court awarded them a judgment of $14,516.69 for the fixtures in the home. The Schnaubelts now appeal.[3] Additional facts will be provided in the discussion below.

## DISCUSSION

¶15 We review a circuit court's summary judgment decision de novo, applying the same methodology as the circuit court. *Springer v. Nohl Elec. Prods. Corp.*, 2018 WI 48, ¶9, 381 Wis. 2d 438, 912 N.W.2d 1. First, we examine the pleadings to determine whether a claim for relief has been stated. *Id.*, ¶10. A complaint must contain "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." WIS. STAT. § 802.02(1)(a) (2019-20).[4] "[T]he sufficiency of a complaint depends on [the] substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled." *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶31, 356 Wis. 2d 665, 849 N.W.2d 693.

¶16 If a claim for relief has been stated, we then determine whether any material factual issues exist. *Springer*, 381 Wis. 2d 438, ¶11. Summary judgment must be granted if the pleadings, depositions, answers to interrogatories, admissions and affidavits establish that there is no genuine issue as to any material

---

[3] On December 23, 2021, the Schnaubelts moved this court to supplement the record to show that the Department of Safety and Professional Services (DSPS) had reopened an investigation into Uecker's conduct as a real estate broker in the transaction at issue in this case. We denied that motion on January 7, 2022, because such information was not before the circuit court when it made its summary judgment decision.

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

fact and that the moving party is entitled to a judgment as a matter of law. WIS. STAT. § 802.08(2).

## I. Claims against Rucon

¶17 The Schnaubelts argue that contrary to the circuit court's conclusions, they properly pled a breach of contract claim against Rucon, or alternatively, that they were third-party beneficiaries of a construction agreement between Rucon and the Development Company. They contend that their complaint met Wisconsin's notice pleading standards by alleging "that construction was deficient and [that] Uecker and his development company had breached multiple promises."

¶18 We reject the Schnaubelts' arguments. To state a breach of contract claim, a plaintiff must first allege facts that suggest a contract existed between the plaintiff and the defendant. *See Brew City Redev. Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, ¶11, 289 Wis. 2d 795, 714 N.W.2d 582. Here, the Schnaubelts' amended complaint alleged that Rucon "agreed to construct a home on the Property" as part of *the Agreement*. But the plain language of the Agreement, which the Schnaubelts attached to their amended complaint, clearly shows that Rucon was not a party to the Agreement and had no obligations under it. The only parties to the Agreement were the Development Company and the Schnaubelts. "When the allegations of a pleading are inconsistent with the terms of a document attached as an exhibit, the terms of the document fairly construed, prevail over averments differing in the complaint." *Friends of Kenwood v. Green*, 2000 WI App 217, ¶11, 239 Wis. 2d 78, 619 N.W.2d 271. The plain language of the Agreement therefore prevails over any suggestion in the amended complaint that Rucon was a party to the Agreement; it was not.

8

¶19 Although the Schnaubelts also suggest that Rucon "was an implicit party to the offer to purchase" because Rucon's drawings and specifications for the home were incorporated into the Agreement, the plain language of the Agreement again establishes that Rucon was not a party. The Development Company, an actual party to the Agreement, merely chose to use Rucon's drawings and specifications as part of its transaction with the buyers. The Schnaubelts also fail to identify any legal authority supporting the proposition that a third party can become subject to a contract because another party attached the third party's work product to that contract. The Schnaubelts' argument is undeveloped, and we need not address it further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments supported by no legal authority).

¶20 In addition, to the extent the Schnaubelts argue that they properly stated a claim for breach of an oral contract with Rucon, we conclude they have not. The Schnaubelts did not allege any facts regarding an oral agreement between them and Rucon, and they have therefore failed to plead a necessary "transaction or occurrence" that would give rise to a breach of an oral contract claim. *See* WIS. STAT. § 802.02(1)(a); *see also Data Key*, 356 Wis. 2d 665, ¶31. The Schnaubelts did explicitly allege that Rucon agreed to construct the home under the Agreement. But, as we have already discussed, Rucon was not a party to the Agreement; rather, its work was being used by the Development Company, a true party to the Agreement. In short, the Schnaubelts' amended complaint contains no allegations that suggest that they had an oral or written contract with Rucon.

¶21 The Schnaubelts' third-party beneficiary argument fails for similar reasons. "[I]n order to state a claim based on third-party beneficiary status, the

complaint must allege facts sufficient to show that the agreement that was breached was entered into primarily and directly for plaintiff's benefit or the complaint must have attached a copy of the agreement that demonstrates that purpose." ***Hoida, Inc. v. M&I Midstate Bank***, 2006 WI 69, ¶19, 291 Wis. 2d 283, 717 N.W.2d 17. The Schnaubelts did not attach a copy of any agreement between Rucon and the Development Company to their amended complaint, and their amended complaint does not allege any facts suggesting an agreement between the Development Company and Rucon existed, let alone an agreement "entered into primarily and directly for [the Schnaubelts'] benefit." *See **id.***

¶22 The Schnaubelts contend that "the *only* possible inference" from their complaint was that they "were the ultimate and intended beneficiaries of Rucon's construction." They fail to recognize, however, that whether they were the intended beneficiaries of Rucon's construction of this "spec home"—which started long before the Schnaubelts began transacting with the Development Company—is irrelevant.[5] The relevant question here is whether they were the intended beneficiaries of an agreement between Rucon and the Development Company at the time those two parties entered into a contract. Because the amended complaint failed to allege any facts suggesting that Rucon and the Development Company entered into an agreement primarily and directly for the Schnaubelts' benefit, the Schnaubelts failed to allege the necessary facts for a breach of contract claim as a third-party beneficiary. *See **id.***

---

[5] A "spec home" is a home "built for sale by a developer with no specific purchaser in mind" but in anticipation that someone will indeed purchase it. ***Jutting v. Hendrix***, 2000 SD 25, ¶3 n.2, 606 N.W.2d 140, 141 n.2; *see also **Big Lake Lumber, Inc. v. Security Prop. Invs., Inc.***, 836 N.W.2d 359, 361 n.2 (Minn. 2013).

## II. Claims against Uecker

¶23    The Schnaubelts next argue that the circuit court improperly granted summary judgment on their claim against Uecker for violating his duties under WIS. STAT. § 452.133(1)(a)-(b) to provide brokerage services honestly, fairly, and with reasonable skill and care.    They contend, among other things, that Uecker: (1) used "one-sided tactics throughout the transaction that benefited him and his various companies to the detriment of the Schnaubelts"; (2) "drafted the offer to purchase, even though he owned and operated the seller"; (3) "took steps to preclude Ms. Walters from reviewing the offer to purchase by withholding information about the October 22, 2017 meeting"; and (4) "eliminated a pre-closing inspection" from the Agreement.[6]  The Schnaubelts argue that whether Uecker complied with his statutory duties is a question of fact that "should not have been determined on summary judgment."

¶24    As relevant to this appeal, a real estate broker must provide brokerage services "honestly and fairly" and "with reasonable skill and care" to all parties to a transaction.  WIS. STAT. § 452.133(1)(a)-(b), (4m)(a).  The parties do not dispute that Uecker provided brokerage services when he negotiated and drafted the Agreement and when he negotiated and drafted subsequent amendments to the Agreement.  Based on the undisputed facts, we conclude, as a

---

[6] The Schnaubelts list additional allegations regarding Uecker's conduct in their reply brief.  Many of these allegations, however, are taken from an unsigned and unsworn complaint that the Schnaubelts filed with DSPS.  Although that complaint is evidence of what the Schnaubelts asserted in that complaint, the underlying allegations in the complaint are not evidentiary facts that would be admissible as evidence.  *See* WIS. STAT. § 802.08(3).  We therefore decline to consider those allegations to the extent they are supported only by the Schnaubelts' complaint to DSPS.

matter of law, that Uecker did not violate his duties to provide brokerage services honestly, fairly, and with reasonable skill and care.

¶25 The Schnaubelts have not identified any facts from which one could reasonably infer that Uecker was dishonest, unfair, or acted without reasonable skill and care while negotiating the Agreement. It is undisputed that Uecker advised the Schnaubelts to speak with Walters to determine whether they had an "agency agreement" with her. It is also undisputed that Renae texted Walters, describing her interactions with Uecker and stating: "I'm uncertain how to proceed forward? He had asked me to talk to you to see what your thoughts were?" After speaking to Renae, Walters contacted Uecker, and Uecker told Walters that he would call her back on Monday, October 23, 2017. Before that could occur, however, the Schnaubelts met with Uecker on Sunday, October 22 and decided to sign the Agreement.

¶26 Although the Schnaubelts contend that Uecker purposefully excluded Walters from negotiations on October 22, 2017, they do not identify any actions that he took to prevent Walters from attending that meeting, beyond failing to inform her of the meeting—which the Schnaubelts could have done themselves. Furthermore, even if the Schnaubelts did not intend to sign an offer to purchase at the October 22 meeting, they clearly knew Walters was not present and had not been involved in drafting or reviewing the Agreement. If they wanted Walters' help, they could have refused to sign the Agreement on October 22 and discussed the matter further with Walters at a later time.

¶27 The Schnaubelts may have felt pressured into signing the Agreement, but such pressure cannot reasonably be deemed the result of any dishonest or unfair conduct by Uecker. Rather, Uecker told the Schnaubelts that

they needed to sign the Agreement before they could make changes to the construction plans and that they "needed to decide right away so the project avoided delays." The Schnaubelts have not identified any facts suggesting that those representations were dishonest or unfair. Indeed, it is undisputed that construction had already begun, the foundation was complete, the framing was nearly complete if not complete, and "the electrical and utilities were being roughed in." The Development Company was in a position to sell the home to any potential willing buyer that came forward at that time. Ultimately, the Schnaubelts have failed to present any facts showing that they signed the Agreement because of Uecker's dishonest or unfair conduct rather than because of their desire to buy the home and to exert control over the design of the home.

¶28 Uecker also was not dishonest or unfair by seeking provisions that favored the Development Company in the Agreement. The beginning of the Agreement clearly states that it was drafted by the seller's agent and that it was not drafted by an agent representing the buyer. Uecker therefore disclosed that he only represented the seller, the Development Company. Moreover, as the agent for the Development Company, Uecker had a duty to loyally represent the Development Company's interests—a duty that does not extend to all parties to the transaction. *See* WIS. STAT. § 452.133(2)(a). That duty, in part, requires that a real estate broker

> [p]lac[e] the client's interests ahead of the interests of persons in the transaction who are not the firm's clients by not disclosing to persons in the transaction other than the firm's clients information or advice the disclosure of which is contrary to the interests of a client of the firm, unless the disclosure is required by law.

Sec. 452.133(2)(a)2. Beyond the general duty to be honest and fair, the Schnaubelts have not identified any law requiring Uecker to provide them with

13

objective information and advice or to draft the Agreement in a manner that is favorable to them. Notably, the Schnaubelts do not identify any patently unreasonable terms in the Agreement.

¶29 Uecker also expressly disclosed in the Agreement that he had an interest in the Development Company. Although the Schnaubelts suggest that it was improper for him to draft the Agreement while having an interest in the Development Company, WIS. STAT. § 452.133(3)(b) permits a real estate broker to act in a transaction on behalf of an organization in which the broker has an interest when all of the parties to the transaction provide their written consent. It is undisputed that the Schnaubelts gave their written consent for Uecker to act as such in the Agreement. They cannot now complain that Uecker acted unfairly when he drafted the Agreement while having an interest in the Development Company.

¶30 Finally, the Schnaubelts have not identified any facts suggesting that Uecker acted dishonestly, unfairly, or without reasonable skill and care while negotiating and drafting subsequent amendments to the Agreement. The Schnaubelts signed the first amendment, which included provisions regarding an appraisal and an escrow account, on November 15, 2017—two days before the November 17 deadline to accept that amendment. Thus, the Schnaubelts had ample opportunity to consider the amendment and, if necessary, to contact someone for advice.

¶31 In addition, the subsequent three amendments all pertained to the final purchase price, and although the Schnaubelts argue that Uecker failed to provide detailed information regarding those amendments before executing them, they do not identify any discrepancies or improper charges. To be sure, Michael

14

did allege in an affidavit that the Schnaubelts "believe [they] were overcharged at numerous points throughout construction," but he did not identify any specific charges that were improper or provide evidence supporting those allegations. The Schnaubelts' mere belief of there being improper charges, without any evidence to support such belief, does not create a genuine issue of material fact. *See **Kraemer Bros., Inc. v. United States Fire Ins. Co.***, 89 Wis. 2d 555, 571, 278 N.W.2d 857 (1979) ("[I]nformation and belief does not satisfy the statutory requirement that the affidavit be made on personal knowledge and set forth evidentiary facts as would be admissible in evidence.").

¶32     In sum, the Schnaubelts have not identified any evidence showing, or permitting a reasonable inference, that Uecker violated his duties under WIS. STAT. § 452.133(1)(a)-(b) to provide brokerage services honestly, fairly, and with reasonable skill and care.

## III. Claims against the Development Company

### A. *Breach of contract*

¶33     The Schnaubelts argue that the circuit court erred by granting the Development Company summary judgment on their breach of contract claim. They contend the Development Company breached the Agreement, including the implied duty of good faith and fair dealing, by refusing to allow for an inspection of the home after orally agreeing to do so. The Schnaubelts acknowledge that the Agreement did not contain an inspection contingency, but they assert that the Development Company "orally modified" the Agreement to allow for an inspection.

¶34    As an initial matter, we decline to address the Schnaubelts' arguments regarding an oral modification of the Agreement because they did not make those arguments to the circuit court.  The Schnaubelts stated in their brief opposing summary judgment that "[they] have always admitted that the [Agreement] does not contain an inspection contingency.  The [Schnaubelts'] claim, as it relates to an inspection, was for a breach of [the Development Company's] *implied duty of good faith*."  (Emphasis added.)  It is a fundamental appellate precept that we will not "blindside [circuit] courts with reversals based on theories which did not originate in their forum."  *See Schonscheck v. Paccar, Inc.*, 2003 WI App 79, ¶11, 261 Wis. 2d 769, 661 N.W.2d 476 (citation omitted).  Therefore, we will only address those theories argued to the circuit court—i.e., whether there were genuine issues of material fact regarding a violation of the implied duty of good faith.[7]

¶35    The Schnaubelts argue that the Development Company "defeated the Schnaubelts' performance" by cancelling the promised inspection.  They contend that if they had been allowed to perform the inspection, then "perhaps the construction defects the Schnaubelts identified could have been remedied …."  They also argue that the Development Company breached its duty of good faith

---

[7] Our decision to address only the Schnaubelts' implied duty of good faith argument is further supported by the evolving nature of the Schnaubelts' "oral modification" argument.  After the Development Company argued on appeal that the statute of frauds precluded oral modification, the Schnaubelts argued for the first time in their reply brief that the Agreement— though subject to the statute of frauds—could be orally modified "when equity requires it," and that equity required enforcing the oral promise to provide an inspection.  The Development Company, however, had no opportunity to respond to those additional arguments.  Even if we addressed the Schnaubelts' oral modification argument, we would decline to address any argument raised for the first time in their reply brief, including equitable arguments involving oral modification.  *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (we need not consider arguments raised for the first time in a reply brief).

when Uecker proposed "last-minute amendments" to the Agreement and cancelled the inspection "in retaliation for the Schnaubelts' refusal to sign [the fifth amendment to the Agreement]."

¶36    The implied duty of good faith requires that a party to a contract "will not intentionally and purposely do anything to prevent the other party from carrying out his or her part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶41, 301 Wis. 2d 752, 734 N.W.2d 169 (citation omitted).

¶37    The Schnaubelts have failed to identify any facts suggesting that the Development Company intentionally did anything to prevent them from carrying out their obligations under the Agreement.  The Schnaubelts seem to suggest that they were unable to secure financing for closing, but they do not identify any evidence showing that the cancelled inspection, or any other action by the Development Company, interfered with their ability to secure financing.  It is undisputed that their lender walked through the home on February 9, 2018, to complete the appraisal.  The Schnaubelts appear to imply that their lender could not finalize their loan without the final cost of the home, but it is undisputed that the final purchase price of the home never changed after the fourth amendment to the Agreement was executed on January 25, 2018.  Regardless, it is also undisputed that the Agreement did not contain a financing contingency, and the Schnaubelts have not identified any evidence suggesting that they were otherwise unable to pay for the home without financing.

¶38    The Schnaubelts have also failed to point to any facts demonstrating that the Development Company's actions injured their right to receive the fruits of

the Agreement. The Schnaubelts criticize Uecker for proposing "last-minute amendments which were contrary to their interests and reduced his obligation and responsibility for the quality of [construction] of the home …." The Schnaubelts also contend that Uecker cancelled the inspection "in retaliation for the Schnaubelts' refusal to sign [the fifth amendment to the Agreement]." Even if we assumed these assertions were true, such actions did not injure the Schnaubelts' rights to purchase and receive the home that they had bargained for under the Agreement. It is undisputed that the Schnaubelts did not sign any amendments after January 25, 2018, and that the Agreement had no inspection contingency. To the extent the Schnaubelts contend that the earlier amendments violated the duty of good faith, they had no obligation to sign those amendments. Ultimately, the Schnaubelts were in no worse position after the cancelled inspection and after the Development Company's subsequent actions than they were in before the parties ever informally agreed to an inspection.

¶39 In short, the circuit court did not err in granting summary judgment on the Schnaubelts' breach of contract claim against the Development Company.

### B. Unjust enrichment

¶40 Although the circuit court granted the Schnaubelts partial summary judgment on their unjust enrichment claim for their actual costs of the fixtures installed in the home, the Schnaubelts argue that genuine issues of material fact exist regarding whether the Development Company was also "unjustly enriched by the Schnaubelts' design efforts." They assert that Renae and their interior designer provided design work and that their designs were retained by the third-party buyer. The Schnaubelts further argue that "[h]ad [the Development

18

Company] sold the home absent the Schnaubelts' design work, the purchase price received from a third party may well have been lower."

¶41 Unjust enrichment requires proof of three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so. *Sands v. Menard*, 2017 WI 110, ¶30, 379 Wis. 2d 1, 904 N.W.2d 789. "[U]njust enrichment is based on equitable principles, with damages being measured by the benefit conferred upon the defendant, not the plaintiff's loss." *Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 188, 557 N.W.2d 67 (1996).

¶42 The Schnaubelts' arguments are premised almost entirely on Michael's affidavit submitted in support of their motion for reconsideration. That affidavit contained new evidence discussing their design work on the home and the third-party buyer's alleged statement that certain design elements were kept in the home. The Schnaubelts' reliance on that affidavit is misplaced. "A party may not use a motion for reconsideration to introduce new evidence that could have been introduced at the original summary judgment phase." *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶46, 275 Wis. 2d 397, 685 N.W.2d 853. The Schnaubelts' affidavit fails to explain why that new evidence could not have been introduced at the original summary judgment phase, and we therefore decline to consider that evidence here.

¶43 When considering only the evidence before the circuit court during its summary judgment decision, it was undisputed that the Schnaubelts' design work "had to be changed when the [home] was subsequently purchased by a third-party [because] the design elements had obviously been catered to [the

19

Schnaubelts'] tastes." Because the Schnaubelts failed to dispute that fact during the summary judgment phase, they failed to show that they conferred any benefit on the Development Company. *See Sands*, 379 Wis. 2d 1, ¶30.

¶44     Moreover, even if we did consider the Schnaubelts' new evidence and assumed that they could theoretically prove that they conferred some benefit on the Development Company with their design work, they failed to produce any evidence showing the monetary value of such benefit. At trial, damages must be proven with reasonable certainty—i.e., evidence sufficient to enable the fact finder "to make a fair and reasonable approximation." *Management Comput. Servs.*, 206 Wis. 2d at 189. To establish damages with enough certainty to present a genuine issue of material fact to prevent summary judgment, a party must show that a reasonable jury could award the party damages in an amount that is supported by the evidence. *AccuWeb, Inc. v. Foley & Lardner*, 2008 WI 24, ¶19 n.8, 308 Wis. 2d 258, 746 N.W.2d 447. At most, the Schnaubelts established that they and their designer contributed to the design of the home and that certain design elements may have been retained in the home. They did not present any evidence, however, suggesting that their design efforts increased the value of the home, such that the home was worth more with their design contributions than with the original design. Accordingly, no reasonable fact finder could award the Schnaubelts damages on this record.

¶45     For each of the foregoing reasons, the circuit court did not err by dismissing the Schnaubelts' claim that the Development Company was unjustly enriched by their design work.

**IV. Leave to amend the complaint**

¶46 As an alternative argument, the Schnaubelts contend that the circuit court erroneously exercised its discretion by denying their request to amend their complaint to allege an oral contract with Rucon or to assert a claim regarding construction defects against the Development Company. They contend that the court erroneously concluded that there were no genuine issues of material fact regarding the proposed amendments to their claims.

¶47 In response, Rucon and the Development Company do not directly address the Schnaubelts' arguments. Instead, they argue that the circuit court did not erroneously exercise its discretion by denying the amendment of the complaint because: (1) the Schnaubelts' request to amend their complaint appeared in their brief opposing summary judgment; (2) the Schnaubelts' request was a "fallback position rather than an actual motion for leave to file an amended complaint"; and (3) significant time had passed since the Schnaubelts had sufficient facts to amend their complaint.

¶48 Although Rucon and the Development Company have identified some relevant considerations that a circuit court might consider when addressing a motion to amend a complaint, *see Mach v. Allison*, 2003 WI App 11, ¶27, 259 Wis. 2d 686, 656 N.W.2d 766 (2002), those considerations were not the basis of the court's decision here. Rather, the court concluded that there would be no genuine issues of material fact following the Schnaubelts making the proposed amendments to their claims, and that they could not prevail on those claims. In doing so, the court concluded that the home had been completed in a timely manner because the appraiser walked through the home on February 9, 2018, and because the City of Appleton issued a certificate of occupancy. The court also

21

concluded that the Schnaubelts had not suffered any damages as a result of any alleged construction defects because their claims, in the court's view, only related to the siding of the home and because the siding had a ten-year warranty. In essence, the court concluded that the Schnaubelts' amendments would be futile.

¶49 We review a circuit court's decision to grant or deny a motion to amend a complaint for an erroneous exercise of discretion. *Hess v. Fernandez*, 2005 WI 19, ¶12, 278 Wis. 2d 283, 692 N.W.2d 655. A court properly exercises its discretion when it examines the relevant facts, applies a proper legal standard, and, using a demonstrated rational process, reaches a reasonable conclusion. *Id.* Where, as here, the circuit court's decision depends on the application of summary judgment methodology, we review the court's application of that methodology de novo. *See Habermehl Elec., Inc. v. DOT*, 2003 WI App 39, ¶12, 260 Wis. 2d 466, 659 N.W.2d 463; *see also Springer*, 381 Wis. 2d 438, ¶9.

¶50 We agree with the Schnaubelts that the circuit court erroneously concluded that they could not prevail on their proposed claims as a matter of law. In concluding that Rucon and the Development Company completed construction in a timely manner, the court never addressed Uecker's admission in his affidavit that "certain things … needed to be finalized in warmer months," including "fixing nail holes in siding, landscaping, [and pouring the] driveway." An issue of fact therefore exists regarding the timely completion of construction.

¶51 Whether that issue of fact is "genuine" and "material" remains unclear on this record. *See Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC*, 2018 WI 112, ¶80, 384 Wis. 2d 669, 920 N.W.2d 767 ("A factual issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. A 'material fact' is one

that is 'of consequence to the merits of the litigation.'" (citations omitted)).  The circuit court never identified any provisions in the Agreement, or identified any other law, that would permit certain projects to be completed after the closing date.  Likewise, Rucon and the Development Company have not identified any governing law for these matters on appeal.  As the parties moving for summary judgment, Rucon and the Development Company had the burden of establishing the absence of genuine issues of material fact.  *See id.*  Without any governing facts or law on this point, we are unable to determine whether the unfinished projects created a genuine issue of material fact regarding the merits of the amended claims, and we must therefore resolve that reasonable doubt in favor of the nonmoving parties, the Schnaubelts.  *See id.*

¶52     In addition, the circuit court failed to consider all of the construction defects identified by the Schnaubelts before considering whether the warranty for the home's siding would apply.  Although the Schnaubelts' response to an interrogatory identified numerous concerns regarding the siding of the home, that interrogatory also identified multiple construction defects that were unrelated to the siding of the home, including: (1) improperly sealed window frames; (2) a lack of flashing on lighting fixtures, electrical outlets, and a mortar joint; (3) a lack of "kickout flashing" on gutters; (4) shingles that were not extended out far enough over gutters; (5) an improperly sealed PVC vent; (6) the "stone veneer was falling off the front steps"; and (7) the window trim had its backside grooves showing.

¶53     The circuit court's conclusion that the construction defects only related to the home's siding was therefore clearly erroneous.  There is also no evidence suggesting that the "ten-year full parts and labor warranty" for the home's siding would provide coverage for those construction defects.

Accordingly, the court erred by concluding that such warranty precluded the Schnaubelts from proving damages.

¶54    Because the circuit court erroneously concluded that there were no genuine issues of material fact regarding the Schnaubelts' proposed amended claims and that the Schnaubelts could not prevail on those claims as a matter of law, we must conclude that the court erroneously exercised its discretion by denying the Schnaubelts' request to amend their complaint. We reverse the court's decision in that regard and remand for further proceedings consistent with this opinion.[8]

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] We decline to address the factors potentially supporting the circuit court's exercise of discretion discussed by Rucon and the Development Company because the circuit court never addressed those factors in exercising its discretion, instead concluding, in essence, that the proposed amended claims would also fail on summary judgment as a matter of law. *See Mach v. Allison*, 2003 WI App 11, ¶29, 259 Wis. 2d 686, 656 N.W.2d 766 (2002). The circuit court may nonetheless consider those factors on remand should it choose to do so.